WILLIAM C. HENDRICKS, executor of JOHN HENDRICKS, deceased, *et al.*, plaintiffs in error, *vs.* DANIEL R. MITCHELL, *et al.*, defendants in error.

1. Hendricks, as executor, was sued, and filed none of the usual pleas to protect himself from personal liability, because the estate was solvent. By the war the estate was made insolvent: *Held*, that equity and the act of 12th March, 1866, will relieve him from personal liability.
2. To reduce his liability, he might, in the Superior Court, prove payments which had been disallowed by the Ordinary.

Equity. Demurrer. Decided by Judge MILNER. Floyd Superior Court. July Term, 1867.

The bill of William C. Hendricks, Hiram Hammond, L. D. Wootten, Jesse H. Phelph and Abner Echols made the following case:

John Hendricks, of Floyd county, died, leaving an and a will in which William C. Hendricks and John A. Hendricks were nominated as his executors. On the 14th of

Hendricks, ex'r, *et al.*, *vs.* Mitchell, *et al.*

August, 1856, the will was proven and admitted to record in said county, and both of said executors were qualified.

William C. Hendricks did most of the business; he found the estate to consist of slaves and some real estate and other personalty; the slaves were appraised at $12,000.00, the lands at say $6,000.00, and the other personalty at $2,000.00; the liabilities of the estate were about $15,000.00, and he believed it would pay out and leave a balance for the legatees.

William Cline held a note made by said testator; he sued said executors on it, and at November Term, 1859, of Floyd Inferior Court, obtained a judgment for $1,878.83 principal, $508.50 for interest to the 14th of November, 1859, and $5.35 for costs. Upon this judgment a *fi. fa.* was issued and put into the sheriff's hands for collection. William C. Hendricks, executor, because property was dull and would likely be sacrificed if sold by the sheriff, and in order to make the property turn out most advantageously for the creditors and legatees, borrowed money and paid off the *fi fa.* Wootten and Echols stood William C. Hendricks' security for $1,000.00 of said money borrowed from M. A. Lawrence, William C. Hendricks, Jesse H. Phelps, Hiram Hammond, and A. H. Davis, Jr., stood security for the payment of another $1,000.00 of it, borrowed from John Mills, and William C. Hendricks advanced the $438.95 balance necessary to pay said *fi. fa.*

"By a mistake or oversight," they neglected to have said *fi. fa.* assigned to them, and "by a bare oversight" the executors omitted to return the said *fi. fa.* so paid off, as a voucher to the Court of Ordinary, and get credit for such payment.

Emancipation of the slaves and other consequences of the late war, have made the estate wholly insolvent; its available assets are worth not over $1,500.00, and the liabilities, besides the expenses of administration, amount to $8,000.00.

Before emancipation, several judgments were entered against said executors, on claims against said testator, to-wit:

In favor of D. R. Mitchell,      for about $1,700.00,
"          Underwood & Smith,      "       $ 200.00,
"          B. Thrasher,            "       $2,236.05.

While these suits were pending, said executors filed none of the usual pleas for avoiding personal liability, because then said estate was solvent. These creditors now insist that the executors shall pay said judgments out of their own effects or the assets of the estate, or both, and are not willing that they shall use said *fi. fa.* paid off, for a voucher, nor that they shall have the same assigned to them or either of them, nor in any way be subrogated to the rights of Cline, said plaintiff in the said *fi. fa.*, but insist that the borrowers took the money and paid said *fi. fa.* at their own risk.

By the fortunes of the war, William C. Hendricks is insolvent, and his securities will have to bear the burden.

For these reasons, William C. Hendricks, his co-executor and said securities pray that they be allowed to use said *fi. fa.* as a voucher for its full amount and take credit for the same, or have control of the same or be subrogated to the rights of Cline, the said plaintiff in *fi. fa.*, and that the other judgment creditors shall be enjoined from proceeding to enforce their said judgments ; that all other creditors be enjoined from suing them ; that they all come into Court and have the assets marshalled, and so ascertain the percentage to be paid on each of said debts, first paying the expenses of administration ; that a decree may be had, ascertaining and fixing the extent of the individual liability of William C. Hendricks, if any, on said judgments, and that he be therefrom discharged for the reasons aforesaid ; they also pray for *subpœna* and general relief.

Underwood & Smith and D. R. Mitchell demurred to said bill for want of equity. Thrasher demurred also upon that ground, and for misjoinder of parties and causes of action.

The Chancellor sustained the demurrer and dismissed the bill, and this is assigned for error.

WRIGHT & BROYLES, for plaintiff in error, made the following points and citation of authorities :

Hendricks is entitled to a credit on his returns for the sum advanced by him to pay Cline's *fi. fa.*—2 Redf. Law of

Hendricks, ex'r, *et al.*, *vs.* Mitchell, *et al.*

Wills, p. 870 (19), 117 (2 *a*), note 13 to p. 241 ; 3 John's Ch. R. 312.

Plaintiffs entitled to be subrogated to rights of Cline.—2 Lead. Cas. Eq., pp. 235, 236, 230, 231 ; 1 Lead. Cas. Eq., top p. 153, 1st column.

The sureties for the borrowed money have the right to be so subrogated.—Cond. U. S. Supreme Court Reports, 2d vol., p. 268.

Relief from personal liability by emancipation of slaves. —Acts of 1866, p. 63 ; 1 Story's Eq., s. 90 ; 2 do. 878 ; 5 Ga., 274 (7–8) ; 2 Wms. Ex'rs, 751–2.

As to laches, see 3 Lead. Cases in Eq., top p. 441, 443, 444 ; 21 Ga., 442 ; 14 Ga., 323 (4–5).

As to misjoinder.—Story's Eq. Pl., s. 544, note 2.

As to the effect of misjoinder.—Code, 3415, 3416.

Bill not multifarious.—Story's Eq. Pl., s. (271 *a*) 279 *a* ; Story's Eq. Pl., s. (4) 283.

UNDERWOOD & SMITH, BAUGH, for defendants in error.

HARRIS, J.

1. The legislature having, by an act approved on the 12th March, 1866, provided for the relief of executors, administrators, guardians and trustees, in consequence of the emancipation of slaves produced by the recent war, we are persuaded, from the facts stated in complainant's bill, that the Court erred in dismissing it on demurrer.

It may be that when the pleadings are finally made up by other allegations, and the evidence collected to sustain them, it will appear that the executor in this case is without material blame, and that without doing anything contrary to his duty or intending to do the creditors of the estate any wrong, he was surprised by the disastrous turn the war took, and the property in his hands for the payment of debts, swept without criminal or rather inexcusable negligence, from his custody and beyond his control. If the property, which was valuable, was made valueless whilst in his hands, without gross or willful negligence, *by force*, surely there can be no

Hendricks, ex'r, *et al.*, *vs.* Mitchell, *et al.*

principle of equity which, in such a case, would hold a trustee, or one acting in such capacity and in good faith, liable to respond personally for a want of clairvoyance in not discerning in advance what would happen.

There is a rigor in the common-law which, if not controlled in some cases, would be productive of great injustice; as in a case where an executor or administrator, having possession of personal property ample to pay off existing claims, omits, through ignorance or want of precaution or carelessness of his attorney, when sued, to file his plea of *plene administravit* or *plene administravit præter*, the one or the other as the exigency may require, so as to protect himself and securities, if there be any, against any possible personal liability. Without such plea, the law presumes assets; judgment is taken; the personal property is destroyed by death, or by some casualty, or by war. In such case, should the executor or administrator be held personally to pay? The law probably says yes, but equity emphatically says, no, and will and ought to interpose to relieve him, unless from gross mismanagement or negligence, or willful violation of the rights of creditors, or by a conversion of the trust property to his own use and benefit, he has divested himself of all right to its protection. Such, we apprehend, was the spirit and design of the recent legislation of the State for the relief of these fiduciaries; it should be liberally interpreted and enforced, unless found, upon mature consideration, to impair the obligation of contracts. Remedial legislation, when mitigating the rigor of the common-law, is always liberally construed. Without pronouncing any opinion whatever upon the merits of the defence of this executor, or intending to intimate one by any remark made or proposition stated, we mean by this decision simply to say that this case should be heard and decided upon its merits after the pleadings have been amended and made up, and evidence heard.

In such cases, technical decisions on demurrer are not satisfactory. The ends of justice require a full and fair trial, and that the executor should have relief under the act referred to, unless by gross negligence or willful misconduct

previous to the passage of that act, he had made himself personally answerable out of his own estate to pay the creditors of the estate he represented.

2. From the bill of exceptions, it appears that complainant sought to diminish his liability to the creditors of the estate, by showing that he had paid a note or judgment against the estate, but which had been disallowed by the Ordinary. Had this been allowed in his accounts by the Ordinary, it would have thereby become in the Superior Courts *prima facie* evidence in his favor; but the rejection or disallowance of such item by the Ordinary, should work no other prejudice to him than to put him, whenever his liabilities are investigated by a jury, to the proof of the facts of payment by him.

We can perceive no satisfactory reason why, upon such proof on the trial of the cause, the executor should not be credited with such payment, and according to the grade of the claim paid as it existed at the death of his testator, and in case of insufficiency of assets to pay all creditors of the same grade, then to be credited with its *pro rata* share, according to the priorities established by law.

Judgment reversed.